**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

WORK CAT FLORIDA LLC f/k/a
WORK CAT TRANS GULF, LLC,

   Debtor.
_____/

DOUGLAS N. MENCHISE,
as Chapter 7 Trustee

   Plaintiff,

v.

LOUISIANA INTERNATIONAL MARINE, LLC,

   Defendant.
_____/

Case No.: 8:21-02588-CPM
Chapter 7 case

Adversary No.: _____

**ADVERSARY COMPLAINT OBJECTING TO ADMINISTRATIVE
CLAIM, AVOIDANCE OF PREFERENTIAL TRANSFERS,
<u>DECLARATORY RELIEF, AND OTHER RELATED RELIEF</u>**

Plaintiff, Douglas N. Menchise, as Chapter 7 Trustee (the "Trustee"), by and through his undersigned counsel, and pursuant to 11 U.S.C. §§ 105(a), 502, 541, 547 and 550 and other applicable law, files this Adversary Complaint against Louisiana International Marine, LLC ("LIM" or "Defendant") as applicable, and in support thereof alleges:

**I.     NATURE OF ACTION**

1. This is an adversary proceeding first objecting to claim(s), and then seeking avoidance and recovery of certain preferential transfers, declaratory relief, damages, and disallowance of Defendant's administrative claims for the benefit of the Estate.

**II.    JURISDICTION AND VENUE**

2. This is an adversary proceeding brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), §§ 105(a), 502, 541, 547 and 550 of the Bankruptcy Code, seeking to avoid and recovery certain preferential transfers, declaratory relief, disallowance of Defendant's administrative claim and other relief for the benefit of the Estate and lawful creditors.

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

4. The Debtor's bankruptcy case remains pending before this Court and thus venue is proper pursuant to 28 U.S.C. § 1409(a).

5. The Defendant is a party in interest in this bankruptcy case and claims to be an administrative creditor.

6. This dispute is a "core" proceeding within the meaning of 28 U.S.C. § 157(b) and the Court may enter final orders for the matters contained herein.

7. To the extent that any claim asserted herein constitutes a non-core proceeding and/or if this Court lacks constitutional authority to enter a final judgment on any claim asserted herein, the Trustee hereby consents to the entry of final orders and judgment by the Bankruptcy Court pursuant to Bankruptcy Rule 7008.

### III. THE PARTIES

8. The Plaintiff in this adversary proceeding is the Trustee duly appointed by this Court on June 17, 2021 (Doc. 100) over the Debtor's Bankruptcy Estate (the "Estate"). Consequently, the Trustee has standing to pursue all claims and causes of action belonging to the Debtor and on behalf of the Estate.

9. LIM is an asserted administrative creditor and party in interest in the Debtor's bankruptcy case and has submitted itself to the jurisdiction of this Court by filing its administrative claim in this case.

10. The Debtor has, at all relevant times, conducted business in Florida and has its principal place of business in Florida.

### IV. FACTUAL BACKGROUND

11. On May 18, 2021 ("Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Petition") in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "Bankruptcy Court").

12. On June 17, 2021, the case was converted to a Chapter 7 case (Doc. 87).

**LIM's Engagements and Other Actions with the Debtor**

13. On or about November 12, 2020, pre-petition, LIM entered a "Time Charter Party" agreement (the "Charter Agreement") with the Debtor.

14. The Charter Agreement set out the terms under which LIM's wholly owned vessel, the LA Commander (the "tug-boat") would provide towing services to the Debtor's barges.

15. Pursuant to that pre-petition Charter Agreement, the Debtor paid for LIM's services in assisting with and moving the Debtor's barges between various ports in or around, *inter alia*, Texas and Florida.

*The Pre-Petition Accident*

16. While providing such services pre-petition, on April 7, 2021, LIM's tug-boat collided with the Debtor's chartered vessel, the Atlanta Bridge.

17. Specifically, while the personnel aboard LIM's owned and operated tug-boat, which was positioned at the rear of the Atlanta Bridge, LIM attempted to retrieve a towline and LIM's tug-boat collided with the Atlanta Bridge, causing significant damage to, including a dent in the port side of, the barge just below the main deck. A true and correct copy of the incident report is attached as **Exhibit "A"**.

18. The conditions of the waters at the time of the collision were clear, with visibility of 10 miles in any direction and with minimal wind speed, at 10-15 km/h. *See* Ex. A.

19. In other words, there were no difficult conditions that would cause the tug-boat to collide with the Atlanta Bridge except for the negligent acts and omissions of LIM, and its agents, in towing the Debtor's chartered barge.

20. As a direct and proximate result of LIM's negligent acts and omissions, including LIM's tug-boat's collision with the barge, the Atlanta Bridge was damaged, with repair costs totaling approximately $423,662.22, and consequential damages related to the repositioning of the Atlanta Bridge for necessary repairs in the amount of approximately $100,000, together amounting to at least $523,662.22 (altogether the "Repair Costs").

21. But for LIM and its agents' negligent acts and omissions, LIM's tug-boat would not have collided with the Atlanta Bridge or otherwise caused damages the Debtor is now potentially responsible for in this bankruptcy case.

22. Although LIM initially accepted responsibility for their negligence, LIM's insurance company has now denied all claims for reimbursement stemming from LIM's negligent


acts and omissions on or about May 31, 2021 and LIM refuses to pay for its negligence. *See* Doc. 58.

23. Upon information and belief, LIM originally indicated it would pay for any and all repairs of the Atlanta Bridge, but later informed Trailer Bridge, Inc. it would no longer do so. *See* Doc. 58.

24. This later denial to make payment for the Repair Costs further required that the Atlanta Bridge be re-located to another location at the International Ship Repair in Tampa (the "Shipyard") compounding the costs associated with the damages caused by LIM to the Atlanta Bridge over and above the Repair Costs. *See* Doc. 58.

25. During the pendency of this Bankruptcy case, LIM now disputes any liability for the acts and omissions of its personnel and damages to the Atlanta Bridge. *See e.g.* Doc. 250.

26. Ironically, and while only now categorically denying any liability for the damages caused by LIM, LIM has also served demand upon other parties in interest for fees and costs of services rendered on the Atlanta Bridge, the very vessel it damaged (Doc. 241).

27. The Atlanta Bridge, itself, was chartered by the Debtor pursuant to a separate, pre-petition agreement with Trailer Bridge, Inc. entered August 4, 2020 (the "Barge Charter Agreement"). A true and correct copy of the Barge Charter Agreement is attached as **Exhibit "B"**.

28. The Barge Charter Agreement required that the Debtor keep the Atlanta Bridge "in a good state of repair" and that the Debtor would take all steps required to have "necessary repairs done within a reasonable time." *See* Ex. B.

29. Accordingly, and as a result of LIM's negligent acts and omissions damaging the Atlanta Bridge, the Debtor has been subject to an administrative claim for at least the Repair Costs, if not more, as incurred by Trailer Bridge, Inc. totaling some $523,662.22 (Docs. 194, 240).

*The Preferential Transfers Made to LIM*

30. In addition to the damages caused by LIM to the Debtor's chartered property, the Debtor also made payments to LIM within 90 days of the Petition Date, to wit: between February 17, 2021 and May 18, 2021 (the "Preference Period").

31. Specifically, the Debtor made the following payments to LIM within the Preference Period:

   a. $100,000 for LIM's services on 3/10/2021;

   b. $75,000 for LIM's services on 3/24/2021;

   c. $25,000 for LIM's services on 4/14/2021;

   d. $75,000 for LIM's services on 4/16/2021;

   e. $77,000 for LIM's services on 4/23/2021;

   f. $100,000 for LIM's services on 5/11/2021

32. Altogether, the Debtor made $452,000 in payments to LIM during the Preference Period (the "Preferential Transfers").

33. Stated otherwise, the above-described Preferential Transfers were all made within ninety (90) days of the Petition Date (the "Preference Period").

34. During the Preference Period, LIM was a creditor at the time of each of the Preferential Transfers by virtue of supplying the Debtor with services pursuant to the parties Charter Agreement, for which the Debtor was obligated to pay.

35. Each of the Preferential Transfers was to or for the benefit of a creditor, namely LIM, within the meaning of § 547(b)(1) of the Bankruptcy Code, because each of the Preferential Transfers either reduced or fully satisfied a debt or debts then owed by the Debtor, as described herein.

36. Each of the Preferential Transfers were made for, or on account of, an antecedent debt or debts allegedly owed by the Debtor to LIM then in existence before such Preferential Transfers were made.

37. Each of the Preferential Transfers were made while the Debtor was insolvent. Specifically, the Trustee is entitled to the presumption of insolvency for any transfer made during the Preference Period pursuant to § 547(f) of the Bankruptcy Code, and each of the transfers at issue *sub judice* were made during the Preference Period.

38. Overall, and as a result of each of the Preferential Transfers, LIM received more than LIM would have received if: (i) the Debtor's case was under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) LIM received payments of its debts under the provisions of the Bankruptcy Code

V.  **CLAIMS FOR RELIEF**

**COUNT I – OBJECTION TO LOUISIANA INTEERNATIONAL MARINE, LLC'S AMENDED ADMINISTRATIVE CLAIM (DOC. 245)**

39. The Trustee re-alleges and incorporates by reference paragraphs 1 through 38 of this Adversary Complaint as if fully set forth herein.

40. The Trustee objects to LIM's administrative claim, asserted in the amount $192,000 filed on November 5, 2021 (hereinafter the "Administrative Claim").

41. The Trustee objects to the Administrative Claim for lack of sufficient documentation substantiating its asserted Administrative Claim.

42. Additionally, the Trustee objects to the Administrative Claim based upon the Trustee's rights of set-off, recoupment, and damages based upon the allegations and claims set forth in the instant Adversary Complaint, including, but not limited to: (i) LIM's negligent acts and omissions resulting in damages to the Debtor's chartered property, (ii) Preferential Transfers

received by LIM which diverted assets away from the Debtor to the exclusion and detriment of the Debtor, its owners, and other creditors, and LIM's resulting liability for same.

43. Each of the foregoing grounds justify disallowance of LIM's Administrative Claim, along with other objections, if any, to be determined through discovery.

**WHEREFORE**, the Trustee respectfully requests that this Court disallow any and all of LIM's proof of claim(s), inclusive of its Administrative Claim, and for such other relief as is just and necessary.

### COUNT II – NEGLIGENCE

44. The Trustee re-alleges and incorporates by reference paragraphs 1 through 38 of this Adversary Complaint as if fully set forth herein.

45. This is an action for negligence against LIM.

46. On April 7, 2021, LIM's tug-boat collided with the Debtor's vessel the Atlanta Bridge.

47. LIM, consistent with the parties' relationship, owed a duty of care in providing services to the Debtor, inclusive of safely and properly towing the Atlanta Bridge without damage.

48. Notwithstanding this duty, LIM and its agents breached their duty of care in improperly acting or otherwise failing to act to prevent a collision between the tug-boat and Atlanta Bridge.

49. Specifically, while the personnel aboard the tug-boat, positioned at the rear of the boat, attempted to retrieve a towline, the tug-boat collided with the Atlanta Bridge, causing a dent in the port side of the barge just below the main deck. *See* Ex. A.

50. The conditions of the waters at the time of the collision were clear, with visibility of 10 miles in any direction and with minimal wind speed, at 10-15 km/h. *See* Ex. A

51. In other words, there were no difficult conditions that would cause the tug-boat to collide with the Atlanta Bridge except for the negligent acts and omissions of LIM, and its agents, in towing the Debtor's chartered vessel.

52. But for LIM and its agents' negligent acts and omissions, the tug-boat would not have collided with the Atlanta Bridge or otherwise caused damages for which the Debtor is now being subjected in this bankruptcy case.

53. As a direct and proximate result of LIM's negligent acts and omissions, including LIM's tug-boats collision with the barge, the Atlanta Barge was damaged, resulting in at least $523,662.22 in damages.

54. Upon information and belief, LIM initially admitted liability and that it would pay for any and all repairs of the Atlanta Bridge, but later informed Trailer Bridge, Inc. it would no longer honor the obligations flowing from its admissions. *See* Doc. 58.

55. The Debtor has been subjected to these damages (i.e. the Repair Costs) by virtue of Trailer Bridge, Inc.'s *Application for Payment of Chapter 7 Administrative Expense for Repairs to Debtor's Barge Pursuant to agreed Order Granting, In Part, Trailer Bridge, Inc.'s Motion for Relief from the Automatic Stay* (Doc. 194) and as amended in its *Supplement to Application for Payment of Chapter 7 Administrative Expense for Repairs to Debtor's Barge* (Doc. 240) (the "Trailer Bridge Administrative Claim").

**WHEREFORE**, the Trustee respectfully requests this Court enter judgment against Louisiana International Marine, LLC and in favor of the Debtor for $523,662.22, and for such other relief as is just and necessary.

## COUNT III – DECLARATORY RELIEF

56.     The Trustee re-alleges and incorporates by reference paragraphs 1 through 38 of this Adversary Complaint as if fully set forth herein.

57.     This is a claim brought pursuant to Fed. R. Bankr. P. 7001 and 28 U.S.C. § 2201.

58.     There is an actual controversy between the Trustee and LIM as to what extent do any contractual or other legal bases may otherwise alter LIM's liability to the Trustee and the Estate based upon LIM's damages to the Atlanta Bridge, the associated Repair Costs and other damages.

59.     Pursuant to 28 U.S.C. § 2201, this Court may determine the rights and relations of any party in interest seeking a declaration as to those rights, whether or not relief is or could be sought.

60.     The Trustee seeks a declaration that the underlying liability and recoupment of the Repair Costs, or the value thereof, along with other damages is property of the Estate under § 541 of the Bankruptcy Code.

**WHEREFORE**, the Trustee respectfully requests this Court enter a declaratory judgment finding Louisiana International Marine, LLC is responsible for any and all liability associated with the damages to the Atlanta Bridge and the Repair Costs stemming from those damages, and for such other relief as is just and necessary.

## COUNT IV – AVOIDANCE OF PREFERENTIAL TRANSFERS PER § 547(b)

61.     The Trustee re-alleges and incorporates by reference paragraphs 1 through 38 of this Adversary Complaint as if fully set forth herein.

62.     This is an action to avoid preferential transfers pursuant to 11 U.S.C. § 547.

63. As described herein, during the Preference Period, the Debtor made Preferential Transfers to or for the benefit of LIM in an aggregate amount of not less than $452,000.

64. The Preferential Transfers constituted transfers of property held by the Debtor.

65. During the Preference Period, LIM was a creditor at the time of each of the Preferential Transfers by virtue of supplying the Debtor with services pursuant to the parties Charter Agreement, for which the Debtor was obligated to pay.

66. Each of the Preferential Transfers was to or for the benefit of a creditor, namely LIM, within the meaning of § 547(b)(1) of the Bankruptcy Code, because each of the Preferential Transfers either reduced or fully satisfied a debt or debts then owed by the Debtor, as described herein.

67. Each of the Preferential Transfers were made for, or on account of, an antecedent debt or debts allegedly owed by the Debtor to LIM then in existence before such Preferential Transfers were made.

68. Each of the Preferential Transfers were made while the Debtor was insolvent. The Trustee is entitled to the presumption of insolvency for any transfer made during the Preference Period pursuant to § 547(f) of the Bankruptcy Code.

69. Each of the transfers at issue *sub judice* were made during the Preference Period.

70. As a result of each of the Preferential Transfers, LIM received more than LIM would have received if: (i) the Debtor's case was under Chapter 7 of the Bankruptcy Code; (ii) the transfers had not been made; and (iii) LIM received payments of its debts under the provisions of the Bankruptcy Code.

71. In accordance with the foregoing, each of the Preferential Transfers is avoidable pursuant to § 547(b) of the Bankruptcy Code.

72. LIM was the initial transferee of the Preferential Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Preferential Transfers were made.

**WHEREFORE**, the Trustee respectfully requests this Court enter an order (i) avoiding the Preferential Transfers under § 547(b) of the Bankruptcy Code; (ii) entitling the Trustee to recover the Preferential Transfers or the value of such transfers from LIM under § 550(a) of the Bankruptcy Code, together with pre and post-judgment interest thereon as available and costs, and for such other relief as is just and necessary.

### COUNT V – DISALLOWANCE OF ALL CLAIMS PER § 502(d), (j)

73. The Trustee re-alleges and incorporates by reference paragraphs 1 through 38, 44 through 55, and 61 through 72 of this Adversary Complaint as if fully set forth herein.

74. LIM is an entity from which property or the value of such property is recoverable pursuant to § 550 of the Bankruptcy Code.

75. LIM is a transferee of the Preferential Transfers avoidable under § 547(b)(4), (5) of the Bankruptcy Code.

76. LIM has not paid the amount of the Preferential Transfers, or turned over such property, for which LIM is liable under § 550(a) of the Bankruptcy Code.

77. Pursuant to § 502(d), (j) of the Bankruptcy Code, any and all claims of LIM, inclusive of its Administrative Claim, Claim 9-1 assigned to LIM on July 9, 2021 ("Claim No. 9-1"), and all other scheduled, liquidated, non-contingent and undisputed claims on the Debtor's Petition, against the Debtor or this Estate, must be disallowed or otherwise reconsidered and disallowed until such time as LIM pays to the Debtor an amount equal to the aggregate amount of the Preferential Transfers, plus interest thereon and costs.

78. Accordingly, 11 U.S.C. § 502 allows the Trustee to disallow any and all proof of claims, inclusive of LIM's Administrative Claim and Claim No. 9-1, and all other scheduled, liquidated, non-contingent and undisputed claims on the Debtor's Petition, until such time as LIM pays to the Debtor an amount equal to the aggregate amount of the Preferential Transfers, plus interest thereon and costs.

**WHEREFORE**, the Trustee respectfully requests this Court disallow LIM's claim(s), inclusive of LIM's Administrative Claim and Claim No. 9-1 and all other scheduled, liquidated, non-contingent and undisputed claims on the Debtor's Petition, and for such other relief as is just and necessary.

Respectfully submitted,

Date: December 7, 2021     **SHUMAKER, LOOP & KENDRICK, LLP**

/s/ *Steven M. Berman*
**STEVEN M. BERMAN, ESQUIRE**
Florida Bar No.: 856290
Primary E-Mail: sberman@shumaker.com
101 E. Kennedy Blvd., Suite 2800
Tampa, Florida 33602
Phone (813) 229-7600
Facsimile (813) 229-1660
*Counsel for Trustee Douglas N. Menchise,*
*Ch. 7 Trustee*