# EXHIBIT A

Exhibit "A"

# BIMCO
# BARGEHIRE 2008

**STANDARD BARGE CHARTER PARTY**  PART I

| | | | |
|---|---|---|---|
| 1. | Shipbroker<br>Compass Maritime Services, LLC<br>500 Frank W Burr Blvd.<br>Glenpointe Centre West - First Floor<br>Teaneck, NJ 07666 | 2. | Place and Date<br>August 4, 2020 |
| 3. | Owners/Place of business (Cl.1)<br>Trailer Bridge, Inc.<br>10405 New Berlin Rd. East<br>Jacksonville, FL 32226 | 4. | Charterers/Place of business (Cl.1)<br>Work Cat Trans Gulf, LLC<br>821 South Newport Ave.<br>Tampa, FL 33606 |
| 5. | Barge's name, Call Sign and Flag (Cl. 1 & 13(c))<br>1. ATLANTA BRIDGE<br>2. MEMPHIS BRIDGE<br>United States Flag | | |
| 6. | Type of Barge (Cl.1)<br>Flat Deck Cargo Barge | 7. | GT/NT (Cl.1)<br>5860 GRT / 1758 NRT |
| 8. | When/Where built (Cl.1)<br>1998<br>Gulf Coast Fabrication, Pearlington, MS, USA | 9. | Total DWT (abt.) in metric tons on summer freeboard (Cl.1)<br>1. Approx. 6,394 Tons<br>2. Approx. 6,017 Tons |
| 10. | Class (Cl. 1 and Society 13(a))<br>ABS | 11. | Date of last special survey by the Barge's classification society (Cl.1)<br>1. October 2, 2017<br>2. November 22, 2019 |
| 12. | Further particulars of Barge (Cl.1)<br>Length Overall: 402.75 Ft.<br>Breadth: 100 Ft.<br>Depth: 21.5 Ft. | | |
| 13. | Charter Party period (also state options, if any) (Cl. 2)<br>Two (2) Years FIRM + One (1) Year Option<br>Any Options To Be Mutualy Agreed | 14. | Port or Place of delivery (Cl. 3)<br>LAD Facility, Morgan City, Louisiana |
| 15. | Port or Place of redelivery (Cl. 22)<br>US Gulf Port    or USEC Port TBN - In Owner's Option | 16. | Mobilisation/Demobilisation Fee (Currency and method of payment and where payable) (Cl. 4)<br>N/A |
| 17. | Initial delivery period (Cl. 6(a))<br>August 6, 2020 - August 14, 2020 - Exact date to be nominated by Owners in accordance with the following:<br><br>Barges will be considered 'On Hire' for purposes of Insurance coverage upon completion of the On Hire Survey for each Barge.<br><br>'Free Lying' will be granted after Survey completion to suit departure schedule for the MEMPHIS BRIDGE, meaning the Barge will go 'on hire' for purposes of earning Charter Hire upon Departure Morgan City, LA. However, if any work or deck modification/prep occurs on the Barge prior, she will immediately go 'on hire' for purposes of earning Charter Hire at that time.<br><br>'Free Lying' will also be granted for the ATLANTA BRIDGE, however, as soon as any work/prep/etc. | | |

Copyright © 2008 BIMCO All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

| | |
|---|---|
| commences on the Barge, she will be considered 'on hire' for purposes of earning Charter Hire.<br><br>- Any 'Free Lying' for whatever the reason granted prior to departure shall not exceed seven (7) Days past the Survey date for each Barge. Charter Hire to commence after the seven (7) day Period, even if Barge(s) have not departed or are not being worked on. | |
| 18. Delivery period notification schedule (Cl. 6(b))<br><br>Number of days' notice    Delivery Period<br>**10 Days**                            **Three (3) Days**<br><br>                               Delivery Date<br>                               **One (1) Day** | 19. Daily compensation for late delivery (Cl. 7(a))<br>N/A<br><br>20. Compensation for late delivery (state lumpsum) (Cl. 7 and Cl. 22)<br>N/A<br><br>21. State amount per day per ballast engineer (Cl. 14)<br>N/A<br><br>22. Ballast engineer overtime expenses (state amount per hour per ballast engineer) (Cl. 14(b))<br>N/A |
| 23. Trading limits (Cl. 8)<br>Barge to operate between, but not limited to Morgan City, Louisiana, Brownsville, Texas, and Tampa, Florida within the Atchafalaya River and Gulf of Mexico. | |
| 24. Charter hire (Cl. 15(a))<br>**First 90 Days: USD 2,500.00/Day - Per Barge**<br><br>**Balance of 2020: USD 2,960.00/Day - Per Barge**<br><br>**Balance of (2) Year Charter: USD 3,425.00/Day - Per Barge**<br><br>**Option Year: Rate To Be Mutually Agreed a minimum of 90 Days prior to FIRM Charter Period Expiration** | 25. Rate of interest per annum applicable acc. to Cl. 15 (f)<br>**8%** |
| 26. Currency and method of payment (Cl. 15(b))<br>**United States Dollars by Wire Transfer**<br><br>Owner will invoice Hire for the first two (2) weeks in advance, payable upon receipt. Each of the following six (6) weeks to be invoiced and paid individually by week, seven (7) days in advance of the week.<br><br>For the remainder of the Charter, Owners to Invoice Hire every week, with all payments to be made by Charterers no later than every Friday. Invoices will capture Hire for the previous week. (Monday – Sunday). | 27. Place of payment, also state beneficiary and bank account (Cl. 15(b))<br>Trailer Bridge, Inc.<br>10405 New Berlin Rd. E.<br>Jacksonville, FL 32226<br><br>Wells Fargo National Bank<br>1 Independent Drive<br>Jacksonville, FL 32202-5039<br>Phone: 904-351-7384<br><br>Incoming wires should be sent to:<br>Trailer Bridge, Inc.<br>Wire and/or ACH routing: ABA 121000248<br>Account: 2090000165571<br><br>SWIFT (For International) WFBIUS6S<br>CHIPS 0407<br>Contact: Customer Service - 800-222-2862 |

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

|  | Remit to Address<br>Trailer Bridge, Inc.<br>P.O. Box 861623<br>Orlando, FL 32886-1623 |
|---|---|
| 28. Hull, Machinery and War Risk Insurance (Cl.16) (check mark applicable option) ~~16(a)(i) (Owners to insure)~~<br>☐<br>OR<br>16 (a)(ii) (Charterers to insure)<br>☒ | 29. Protection and Indemnity Insurance (Cl. 17) (check mark applicable option) ~~17(a) (Owners to insure)~~<br>☐<br>OR<br>17 (b) (Charterers to insure)<br>☒ |
| 30. Value of the Barge (Marine and War Risks Insurance) (Cl. 13(a) and 16 (f))<br>**USD 10,000,000.00 (Ten Million United States Dollars) - Per Barge** | 31. State the amount of franchise(s)/deductibles, if any (Cl. 18(b))<br>N/A |
| 32. Bank guarantee/bond (sum and place) (Cl. 28) (optional)<br>N/A | 33. Brokerage commission and to whom payable (Cl. 32)<br>**As Agreed - Owners to pay Brokerage Commission** |
| 34. Dispute Resolution (state whether alternative (a), (b) or (c) of Clause33 agreed; ~~if (c) agreed, also state place of arbitration) (if box not filled in, Cl. 33(a) shall apply)~~ (Cl. 33)<br>**(b) US law, New York arbitration** | 35. Number of additional clauses covering special provisions, if agreed<br>**Five - Clauses 35, 36, 37, 38, 39** |

PREAMBLE - It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter Party which shall include PART I, including additional clauses, if any agreed and stated in Box 35, and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further.

| Signature (Owners)<br>**Trailer Bridge, Inc.**<br><br>*Mitchell Luciano*<br>08/05/2020 | Signature (Charterers)<br>**Work Cat Trans Gulf, LLC**<br><br>*[signature]*<br>08/04/2020 |
|---|---|

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - Standard Barge Charter Party

1. **Definitions**

   In this Charter Party, the following terms shall have the meanings hereby assigned to them:

   "The Owners" shall mean the party stated in Box 3.

   "The Charterers" shall mean the party stated in Box 4.

   "The Barge" shall mean the Barge named in Box 5 and with particulars as specified in Boxes 6 to 12.

2. **Period of Charter Party**

   (a) In consideration of the hire detailed in Box 24, the Owners let and the Charterers hire the Barge for the period stated in Box 13.

   (b) The Charterers shall give a minimum of ~~ten (10)~~ 90 days' notice ~~(unless otherwise stated in Box 13)~~ of their intention to use any optional period(s) as stated in Box 13. <u>The Option period requested by the Charterers shall be agreed to by the Barge Owners prior to taking effect.</u>

3. **Delivery**

   (a) The Barge shall be delivered and accepted by the Charterers at the port or place stated in Box 14.

   (b) The Owners undertake that, at delivery, the Barge shall be of the description set out in PART I hereof. The Barge shall be delivered with cargo spaces free of any obstructions with all previous seafastenings removed and shall be properly documented as regards trading certificates, classification and equipment.

   (c) Delivery by the Owners of the Barge and acceptance of the Barge by the Charterers shall constitute a full performance by the Owners of all the Owners' obligations under this Clause 3, and thereafter the Charterers shall not be entitled to make or assert any claim against the Owners on account of any conditions, representations or warranties expressed or implied with respect to the Barge.

4. ~~Mobilisation and/or Demobilisation~~

   ~~Any mobilisation and/or demobilisation fees, if applicable, shall be paid as set out in Box 16.~~

5. **Substitution**

   The Owners shall have the right to substitute the Barge, at any time up to fifteen (15) days prior to the delivery date, with an equivalent Barge suitable for the purpose of this Charter Party, subject to the Charterers' approval which shall not be unreasonably withheld. Such substitution shall have no effect on the hire rates, terms and conditions of this Charter Party, save that any documented additional costs for preparing the substitute Barge for the service shall be for the Owners' account. The Charterers shall notify the Owners of the approximate additional cost, if any, within five (5) working days after the Owners advise the Charterers of their intention to substitute the Barge.

6. **Time for Delivery**

   (a) The Barge shall be delivered to the Charterers within the period agreed in Box 17.

   (b) The delivery period in sub-clause (a) shall be narrowed down by the Charterers in accordance with the delivery period notification schedule as stated in Box 18.

   (c) The declared delivery period shall always be within the previous declared delivery period and the number of days' notice shall always be counted from the first day in the declared delivery period.

7. **Cancelling**

   (a) Should the Barge not be delivered according to Box 18 the Owners shall pay as compensation to the Charterers

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

~~a daily rate as stated in Box 19 for each day or part thereof counting from 0000 hours on the delivery date until the date delivery actually takes place or an amount as stated in Box 20, whichever is the lesser.~~

~~For the purpose of assessing compensation in accordance with this Clause 7(a) the delivery date shall, in the event the Owners have given notice in accordance with Clause 7(d) below and the Charterers have not exercised their option of cancelling, be deemed to be the revised delivery date stated in the Owners' notice.~~

(b) Should the Barge not be delivered at the latest seven (7) days after the delivery date the Charterers shall have the option of cancelling this Charter Party, ~~and the Owners shall pay to the Charterers the amount stated in Box 20.~~

~~(c) Unless the late delivery is caused by the Owners' negligence or wilful default, the compensation stated in Boxes 19 and 20, respectively, shall be the Charterers' sole financial remedy for damages arising out of the late delivery.~~

(d) If it appears that the Barge will be delayed beyond seven (7) days after the delivery date, the Owners shall, as soon as they are in a position to state with reasonable certainty the day on which the Barge should be ready, give notice thereof to the Charterers asking whether they will exercise their option of cancelling and the option must then be declared within forty-eight (48) hours of the receipt by the Charterers of such notice. If the Charterers do not then exercise their option of cancelling, the revised delivery date stated in the Owners' notice shall be regarded as the new delivery date for the purpose of this Clause.

(e) Notwithstanding any other provision in this Charter Party the Charterers shall have the right to cancel this Charter Party prior to delivery on payment of hire for the firm period as set out in Box 13.

8. **Trading Limits**

(a) The Barge shall be employed within its technical capabilities for work in inland, coastal and offshore waters without limit as to trading areas, but always in lawful trades for the carriage of suitable lawful merchandise within the trading limits indicated in Box 23.

The Charterers undertake not to employ the Barge or suffer the Barge to be employed otherwise than in conformity with the terms of the instruments of insurance (including any warranties expressed or implied therein) without first obtaining, either by themselves or through the Owners, the consent to such employment by the Barge's insurers and complying with such requirements as to extra premium or otherwise as the insurers may prescribe. The Charterers shall keep the Owners advised of the intended employment of the Barge.

(b) Without the prior written consent of the Owners, the Barge shall not enter any ice-bound ports, places or waters or any ports where lights or lightships have been or are about to be withdrawn by reason of ice or where there is a risk that in the ordinary course of events the Barge will not be able on account of ice to safely enter the port, use the port, or leave after having completed loading or discharging.

9. **Excluded Cargoes**

Notwithstanding any provisions to the contrary in this Charter Party it is agreed that nuclear fuels or radioactive materials or waste shall not be loaded or carried under this Charter Party. Stone or similar cargo shall not be carried unless the Owners' prior written consent is obtained.

10. **Surveys**

(a) The Owners and the Charterers shall appoint a mutually acceptable qualified marine surveyor to determine and provide written reports on the condition of the Barge (including internal inspection of the tank compartments to establish the condition of the bottom of the Barge) together with its equipment, machinery and spares at the times of delivery and redelivery hereunder. It is agreed between the parties hereto that the survey reports shall be taken as conclusive evidence of the condition of the Barge and its equipment on delivery and redelivery.

In the event of damage to the Barge during the Charter Party period, the appointed marine surveyor shall in his off-hire survey report assess the cost for repairing such damage and the time required for such repairs and these figures shall be binding on both parties, except for damage recoverable under the Barge's insurance.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

(b) The cost for the on-hire survey and off-hire survey <u>and all associated costs for opening/securing void tank covers and providing a certified Marine Chemist in support of same</u> shall be shared equally between the Owners and the Charterers. Loss of time, if any, in connection with the on-hire survey, shall be borne by the Owners. The off-hire survey shall be conducted in the Charterers' time. In each case the cost of any docking and undocking, if required, in this connection shall be for the Charterers' account.

11. **Inventories and Consumable Oil and Stores**

A complete inventory of the Barge's entire equipment, outfit, appliances and of all consumable stores onboard the Barge shall be made by the marine surveyor on delivery and again on redelivery. On redelivery the Charterers shall pay for all bunkers, lubricating oil, water, paints, oils, ropes and other consumable stores used during the charter period and charged at cost.

12. **Inspection**

(a) The Owners shall have the right at any time to inspect or survey the Barge or instruct a duly authorised surveyor to carry out such survey on their behalf to ascertain the condition of the Barge and satisfy themselves that the Barge is being properly repaired and maintained.

(b) The costs of the inspection or survey shall be borne by the Owners and the inspection shall not hamper the Charterers' operations. All time in respect of inspection, survey or repairs shall count as time on-hire and shall form part of the Charter Party period. The Owners have the right to require the Barge to be surveyed and/or dry-docked for inspection at normal classification intervals, <s>on the dates stated in Box 11</s>. The costs of such <u>Surveys, UWILD or other inspections, and</u> dry-docking shall be for the account of <u>the Owner</u> and in the time of the <u>Charterer</u>. <s>party responsible for maintaining class as on line in Clause 16.</s>

(c) All incidents occurring to the Barge shall immediately be reported in writing to the Owners and the Charterers shall, whenever required by the Owners, furnish them with full information in writing regarding any casualties or other accidents or damage to the Barge.

13. **Maintenance and Operation**

(a) The Barge shall during the Charter Party period be in the full custody and at the absolute disposal for all purposes of the Charterers and under their complete control in every respect. The Charterers warrant that the tug(s) used shall be of a suitable size and capability for the proposed towing services. The Charterers shall maintain the Barge, her machinery, appurtenances and spare parts in a good state of repair, in efficient operating condition and in accordance with good commercial maintenance practice.

The Charterers shall take immediate steps to have necessary repairs done within a reasonable time failing which the Owners shall have the right of withdrawing the Barge from the service of the Charterers without noting any protest and without prejudice to any claim the Owners may otherwise have against the Charterers under the Charter Party.

Unless otherwise agreed, in the event of any improvement, structural changes or expensive new equipment becoming necessary for the continued operation of the Barge by reason of new Class requirements or by compulsory legislation costing more than five per cent (5%) of the Barge's marine insurance value as stated in Box 30, then the extent, if any, to which the rate of hire shall be varied and the ratio in which the cost of compliance shall be shared between the parties concerned in order to achieve a reasonable distribution thereof as between the Owners and the Charterers having regard, inter alia, to the length of the period remaining under the Charter Party shall, in the absence of agreement, be referred to arbitration according to Clause 33.

(b) The Charterers shall at their own expense and by their own procurement navigate, operate, supply, fuel and repair the Barge whenever required during the Charter Party period and they shall pay all charges and expenses of every kind and nature whatsoever incidental to their use and operation of the Barge under this Charter Party, including all taxes except those taxes payable on the Owners' income in the country of registration of the Barge and/or the Owners' registered office.

(c) During the currency of this Charter Party, the Barge shall retain her present name as indicated in Box 5 and shall remain under and fly the flag as indicated in Box 5, provided however that the Charterers shall have the liberty

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

**PART II**
**BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY**

to paint the Barge in their own colours, install and display their insignia and fly their own house flag. Painting and re-painting, instalment and re-instalment shall be for the Charterers' account and time used thereby shall count as time on hire.

(d) The Charterers shall make no structural changes to the Barge or changes in the machinery, appurtenances or spare parts thereof without in each instance securing the Owners' prior written approval thereof. If the Owners so approve, the Charterers shall, at their expense and in their time, restore the Barge to its former condition before the termination of the Charter Party, if the Owners so require.

(e) The Charterers shall have the use of all outfit, equipment and appliances on board the Barge at the time of delivery, provided the same or their substantial equivalent shall be returned to the Owners on redelivery in the same good order and condition as when received, ordinary wear and tear excepted. The Charterers shall from time to time during the Charter Party period replace such items of equipment as shall be damaged beyond ordinary wear and tear. The Charterers shall procure that all repairs to or replacement of any damaged, worn or lost parts or equipment be effected in such manner (as regards workmanship, specification and quality of materials) as not to diminish the value of the Barge. The Charterers have the right to fit additional equipment at their expense and risk but the Charterers shall remove such equipment at the end of the period at their cost and prior to the redelivery of the Barge, unless otherwise mutually agreed in advance and in writing. The Barge's ballast tanks shall be used for ballast water only.

(f) It is expressly understood that the Barge shall be moored in ports or places to lie safely, always afloat at any time of tide.

(g) Towage of the Barge in tandem or as a double tow, that is by the same tug(s) but together with any other floating object, is not permitted unless the Owners' prior written consent is obtained.

14. Ballast Engineer

(a) The Barge may be ballasted, and if submersible submerged and surfaced by the Charterers subject to the Charterers always using a competent ballast engineer for such operations.

(b) In case the Charterers request in writing and the Owners agree to provide a competent ballast engineer, a notice for same of seventy-two (72) hours plus allowance for travelling time to be given by the Charterers for every occasion the Owners' ballast engineer is required. The Charterers agree to pay to the Owners an amount per day as stated in Box 21 per ballast engineer for up to ten (10) hours' work per day including but not limited to travelling time and/or time for standby associated therewith. For any hours in excess of ten (10) hours per day the Charterers shall pay an amount per hour as stated in Box 22 for each ballast engineer. In addition the Charterers shall pay all travel expenses, accommodation expenses and meals for each ballast engineer, all according to the Owners' invoice, and reimburse the Owners for any advance payments they have made in this respect.

(c) The ballast engineer shall at all times follow the orders and directions of the Charterers. The Charterers shall indemnify and hold the Owners harmless from and against all costs, claims, damages, expenses, losses, liabilities and penalties arising out of or in connection with the ballast operations. All liabilities in respect of death and personal injury relating to the ballast engineer shall be the responsibility of the party providing the ballast engineer.

(d) The Charterers shall provide the ballast engineer with safe access to the Barge. Throughout the time that the ballast engineer is on board the Barge the Charterers shall ensure that they, their client or their sub-contractors shall have a representative in attendance who will keep in contact with the ballast engineer.

15. Hire

(a) The Charterers shall pay to the Owners for the hire of the Barge at the rate per calendar day stated in Box 24 commencing from the date of its delivery to the Charterers. Hire to continue until the date when the Barge is redelivered by the Charterers to the Owners.

(b) Payment of hire shall be made in cash without discount as outlined in Part I Box 25 every month in advance on the first day of such month, in the currency and in the manner indicated in Box 26 and at the place stated in Box

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

27.

(c) Payment of hire for the first and last month's hire if less than a full month installment shall be calculated proportionally (if required) according to the number of days in the particular calendar month and advance payment shall be effected accordingly.

(d) Should the Barge be lost or missing, hire shall cease from the date and time when she was lost or last heard of. Any hire paid in advance shall be adjusted accordingly.

(e) Time shall be of the essence in relation to payment of hire hereunder. In default of punctual and regular payment as herein specified, the Owners may require the Charterers to make payment of the amount due within ninety-six (96) running hours of receipt of notification from the Owners, failing which the Owners shall have the right to withdraw the Barge without prejudice to any other claim the Owners may have against the Charterers under this Charter Party. Further, so long as the hire remains unpaid, the Owners shall be entitled to suspend the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof in respect of which the Charterers hereby indemnify the Owners. Hire shall continue to accrue and extra expenses resulting from such suspension shall be for the Charterers' account.

(f) Any delay in payment of hire shall entitle the Owners to interest at the rate per annum as agreed in Box 25.

16. **Hull, Machinery and War Risks Insurance, Responsibilities and Classification**

Sub-clauses 16(a)(i) and 16(a)(ii) are options. State option in Box 28. If Box 28 is not appropriately filled in then Sub-clause 16(a)(ii) shall apply.

(a) (i) Owners to Insure - The Barge shall be kept insured by the Owners at their expense against marine and war risks. All insurance policies shall be in the name of the Owners and with the Charterers named as co-assured with a waiver of subrogation in favour of the Charterers. The Owners at the request of the Charterers shall apply to their insurers to include Charterers' nominated principals as co-assured. The Owners shall provide the Charterers with evidence of the placing of the above insurances.

The Owners shall keep the Barge with unexpired classification and with other required certificates in force at all times during the Charter Party period.

(ii) Charterers to Insure - The Barge shall be kept insured by the Charterers at their expense against marine and war risks. Such marine and war risks insurances shall be arranged by the Charterers to protect the interests of the Owners, the Charterers, and mortgagees (if any), and the Charterers shall be at liberty to protect under such insurances the interests of any managers they may appoint. The terms of the insurance policies are to be approved by the Owners. All insurance policies shall be in the name of the Charterers and with the Owners named as co-assured with a waiver of subrogation in favour of the Owners. The Charterers at the request of the Owners shall apply to their insurers to include Owners' nominated principals as co-assured. The Charterers shall provide the Owners with evidence of the placing of the above insurances.

The ~~Charterers~~ Owners shall keep the Barge with unexpired classification and with other required certificates in force at all times during the Charter Party period.

(b) In the event that any act or negligence of the Charterers shall vitiate any of the insurances herein provided, the Charterers shall pay to the Owners all losses and indemnify the Owners against all claims and demands which would otherwise have been covered by such insurances.

(c) Should the Barge become an actual, constructive, compromised or agreed total loss under the insurances required under sub-clause (a) of this Clause, all insurance payments for such loss shall be paid to the Owners, who shall distribute the moneys between themselves and the Charterers according to their respective interests. The Charterers undertake to notify the Owners of any occurrences in consequence of which the Barge is likely to become a loss as described above.

(d) If the Barge becomes an actual, constructive, compromised or agreed total loss under the insurances arranged by the Owners or the Charterers in accordance with sub-clause (a) of this Clause, this Charter Party shall terminate as of the date of such loss.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

(e) The Charterers shall, upon the request of the Owners, promptly execute such documents as may be required to enable the Owners to abandon the Barge to the insurers and claim a constructive total loss.

(f) For the purpose of insurance coverage against marine and war risks under the provisions of sub-clause (a) of this Clause, the value of the Barge is the sum indicated in Box 30.

17. Protection and Indemnity Insurance and Liability

Sub-clauses 17(a) and 17(b) are options. State option in Box 29. If Box 29 is not appropriately filled in then Sub-clause 17(a) shall apply.

(a) Owners' P&I cover - The Barge shall be kept insured by the Owners at their expense against Protection and Indemnity risks and any risks against which it is compulsory to insure for the operation of the Barge, including maintenance of financial security. The Owners shall name the Charterers as joint entrants on their P&I cover. The Owners shall provide the Charterers with evidence of the placing of the above insurances. The Charterers shall be liable in all circumstances for the following:

(i) All loss or damage suffered by third parties caused by the Barge and/or its equipment including liabilities arising out of, but not limited to, personal injury and death, collision, dock damage, pollution and wreck removal.

In addition the Charterers shall be liable for and insure in all circumstances and provide evidence to the Owners of the following:

(ii) Any sums whatsoever in consequence of the cargo becoming a wreck or obstruction to navigation.

(iii) All loss of or damage to cargo, howsoever caused, including wreck or debris removal of cargo, and/or for damage caused by the cargo, including personal injury and death.

(b) Charterers' P&I cover - Notwithstanding any separate P&I insurances that the Owners may have, the Barge shall be kept insured by the Charterers at their expense against Protection and Indemnity risks and any risks against which it is compulsory to insure for the operation of the Barge. The terms of the P&I insurances are to be approved by the Owners. The Charterers shall establish and provide evidence of financial security or responsibility in respect of oil or other pollution damage as required by any government, including federal, state or municipal or other division or authority thereof, to enable the Barge, without penalty or charge, lawfully to enter, remain at, or leave any port, place, territorial or contiguous waters of any country, state or municipality in performance of this Charter Party without any delay. The Charterers shall make and provide evidence of all arrangements by bond or otherwise as may be necessary to satisfy such requirements at the Charterers' sole expense and the Charterers shall indemnify and hold harmless the Owners against all consequences whatsoever for any failure or inability to do so. The Charterers shall provide the Owners with evidence of the placing of the above insurances. All insurance policies shall be in the name of the Charterers and with the Owners named as co-assured with a waiver of subrogation in favor of the Owners.

The Charterers shall indemnify and hold the Owners harmless against any claims arising from the losses and/or damage set out in (i), (ii) and (iii) below, including possible loss of time on hire.

The Charterers shall be liable for and insure in all circumstances and provide evidence to the Owners of the following:

(i) All loss of or damage to cargo, howsoever caused, including wreck or debris removal of cargo, and/or for damage caused by the cargo, including personal injury and death.

(ii) Any sums whatsoever in consequence of the cargo becoming a wreck or obstruction to navigation.

(iii) All loss or damage suffered by third parties caused by the Barge and/or its equipment including liabilities arising out of, but not limited to, personal injury and death, collision, dock damage, pollution and wreck removal

18. Repairs

(a) The Charterers shall, subject to the approval of the Owners or the Owners' insurers, effect all insured repairs and

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

the Charterers shall undertake settlement of all expenses in connection with such repairs as well as all insured charges, expenses and liabilities. If Sub-clause 16(a)(i) applies the Charterers shall be assured reimbursement through the Owners' insurers for such expenditure upon presentation of accounts.

(b) The Charterers also to remain responsible for and to remedy damage and settle costs and expenses incurred thereby in respect of all other damage not covered by the insurances and/or not exceeding any possible franchise(s) or deductibles as stated in Box 31. All such franchise(s) or deductibles, which are applicable for each and every incident, are for the Charterers' account.

(c) All time used for repairs under the provisions of this Clause, including any deviation, shall count as time on hire and shall form part of the Charter Party period.

(d) Notwithstanding Sub-clause 16(d) the Charterers shall remain responsible for Class survey costs in respect of such damages or repairs.

19. **Ballast Water Management**

(a) All ballast water operations shall be conducted in accordance with the International Convention for the Control and Management for Ships' Ballast Water and Sediments or other similar legislation as applicable. The Charterers shall maintain a ballast water management plan approved by the marine warranty surveyor and ensure that all ballast water operations are conducted in accordance with the plan including obtaining approvals and/or licences as required.

(b) At the Charterers' request the Owners shall provide ballast engineers to conduct the ballast water exchange in accordance with the Charterers' ballast water management plan. The Charterers shall arrange for the transfer of the ballast engineers to and from the Barge.

(c) All costs arising from compliance with legislation including, but not limited to, the development of the ballast water management plan, permits, licences, engineering studies, provision of ballast engineers and delays to the Barge, shall be for the account of the Charterers.

(d) Should ballast water have to be treated or discharged into another vessel or ashore, the costs and time for such activities will be for the account and responsibility of the Charterers.

(e) The Charterers shall indemnify and hold harmless the Owners with regard to all liabilities, damages, and/or additional time and costs arising from or as a result of ballast water operations in accordance with this Clause.

20. **Force Majeure**

Neither party shall be liable for any loss, damage or delay due to any of the following force majeure events and/or conditions to the extent the party invoking force majeure is prevented or hindered from performing any or all of their obligations under this Charter Party, provided they have made all reasonable efforts to avoid, minimize or prevent the effect of such events and/or conditions:

(a) acts of God;

(b) any Government requisition, control, intervention, requirement or interference;

(c) any circumstances arising out of war, threatened act of war or warlike operations, acts of terrorism, sabotage or piracy, or the consequences thereof;

(d) riots, civil commotion, blockades or embargoes;

(e) epidemics;

(f) earthquakes, landslides, floods or other extraordinary weather conditions;

(g) fire, accident, explosion except where caused by negligence of the party seeking to invoke force majeure;

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

## PART II
### BARGEHIRE 2008 – STANDARD BARGE CHARTER PARTY

(h) any other similar cause beyond the reasonable control of either party.

The party seeking to invoke force majeure shall notify the other party in writing within two (2) working days of the occurrence of any such event/condition.

**21. Consequential Loss**

Except as elsewhere provided in this Charter Party, neither the Owners nor the Charterers shall be responsible for any consequential loss, howsoever caused, including but not limited to damage or decline in the market value of the Barge or goods during delays, loss of profit or loss of business opportunities in respect of any claim that the one may have against the other.

**22. Redelivery**

(a) Upon the expiration of this Charter Party, the Charterers shall redeliver the Barge safely moored at the port or place stated in Box 15. Such port/place of redelivery to be always safe and accessible for the tug and the Barge, and where they can lie always safe and afloat at all tides. The Barge shall be redelivered to the Owners in the same or as good a structure, state, condition and class as that in which she was delivered, ordinary wear and tear excepted, with cargo spaces free of any obstructions with all previous seafastenings removed and shall be properly documented as regards trading certificates, classification and equipment. <u>Upon redelivery, any voids that were used for ballast operations, shall be flushed with fresh water and clean of mud and slime with residual fresh water pumped out to minimum levels before re-delivery and returned in the same condition as they were in upon delivery.</u>

(b) If the Charterers, for any reason whatsoever, fail to redeliver the Barge on expiry of the Charter Party period, or any amendment to same which has to be agreed in advance and in writing, the Owners shall be entitled to the agreed rate or to the market rate for that period, whichever is the higher, increased by the amount stated in Box 20. Unless the late redelivery is caused by the Charterers' negligence or wilful default, this compensation shall be the Owners' sole financial remedy for damages arising out of late redelivery.

**23. Early Redelivery**

Upon giving fifteen (15) days' prior notice to the Owners, the Charterers shall, notwithstanding any other provision of this Charter Party, be entitled to effect early redelivery of the Barge and to terminate this Charter Party at any time during the period of the Charter Party as agreed according to Clause 2, provided however, that if exercising this option, the Charterers shall pay hire for the remainder of the period of the Charter Party as agreed according to Clause 2.

**24. Non-Lien and Indemnity**

The Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the Owners in the Barge.

(a) The Charterers shall indemnify and hold the Owners harmless against any lien of whatsoever nature arising upon the Barge during the Charter Party period while she is under the control of the Charterers and on any claims against the Owners arising out of or in relation to the operation of the Barge by the Charterers. Should the Barge be arrested by reason of claims or liens arising out of her operation hereunder by the Charterers, the Charterers shall at their own expense take all reasonable steps to secure that within a reasonable time the Barge is released and at their own expense put up bail to secure release of the Barge.

(b) The Owners shall indemnify and hold the Charterers harmless against any lien or claim of whatsoever nature arising upon the Barge during the Charter Party arising out of the operation of the Barge by Owners or former charterers prior to the delivery of the Barge to Charterers pursuant to this Charter party. Should the Barge be arrested by reason of claims or liens arising out of her operation by Owners or former charterers prior to the delivery hereunder, the Owners shall at their own expense take all reasonable steps to secure the release of the Barge and at their own expense put up bail to secure the release of the Barge. All time that is lost as a result of such an arrest shall be for Owners' account.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

PART II
BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

**25. Lien**

The Owners shall have a lien upon all cargoes and sub-freights and sub-hire for all claims under this Charter Party and the Charterers shall have a lien on the Barge for all moneys paid in advance and not earned.

**26. General Average**

General Average, if any, shall be adjusted according to the York-Antwerp Rules 1994. The Charter Party hire not to contribute to General Average.

**27. Assignment and Sub-Demise**

The Charterers shall not assign this Charter Party nor sub-demise the Barge except with the prior consent in writing of the Owners, which shall not be unreasonably withheld, and subject to such terms and conditions as the Owners shall approve.

If, after obtaining the Charterers' agreement, which shall not be unreasonably withheld, the Owners sell the Barge, either prior to delivery or during the performance of this Charter Party, the Owners shall have the right and be obliged to assign and transfer this Charter Party to the buyer of the Barge upon giving the Charterers prompt notice in writing of the buyers' full style and the time when the Barge will be delivered to the buyers and the assignment will become effective. As from that time the Owners shall be relieved from all obligations and liabilities under this Charter Party and wherever the term the Owners appears it shall thereafter be considered as a reference to the buyers.

**28. ~~Bank Guarantee*~~**

~~The Charterers undertake to furnish, before delivery of the Barge, a first-class bank guarantee or bond acceptable to the Owners in the sum and at the place as indicated in Box 32 as guarantee for full performance of their obligations under this Charter Party.~~

~~*Optional, only to apply if Box 32 is filled in.~~

**29. Requisition/Acquisition**

(a) In the event of the requisition for hire of the Barge by any governmental or other competent authority (hereinafter referred to as "requisition for hire") irrespective of the date during the Charter Party period when "requisition for hire" may occur and irrespective of the length thereof and whether or not it be for an indefinite or a limited period of time, and irrespective of whether it may or will remain in force for the remainder of the Charter Party period, this Charter Party shall not be deemed thereby or thereupon to be frustrated or otherwise terminated and the Charterers shall continue to pay the stipulated hire in the manner provided by this Charter Party until the time when the Charter Party would have terminated pursuant to any of the provisions hereof, always provided, however, that in the event of "requisition for hire" any requisition hire or compensation received or receivable by the Owners shall be payable to the Charterers during the remainder of the Charter Party period or the period of the "requisition for hire", whichever be the shorter.

The hire under this Charter Party shall be payable to the Owners from the same time as the requisition hire is payable to the Charterers.

(b) In the event of the Owners being deprived of their ownership in the Barge by any compulsory acquisition of the Barge or requisition for title by any governmental or other competent authority (hereinafter referred to as "compulsory acquisition"), then, irrespective of the date during the Charter Party period when "compulsory acquisition" may occur, this Charter Party shall be deemed terminated as of the date of such "compulsory acquisition". In such event charter hire to be considered as earned and to be paid up to the date and time of such "compulsory acquisition".

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

## PART II
## BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

30. War Risks (CONWARTIME 2004)

(a) For the purpose of this Clause, the words:

(i) "Owners" shall include the bargeowners, bareboat charterers, disponent owners, managers or other operators who are charged with the management of the Barge, and the Master; and

(ii) "War Risks" shall include any actual, threatened or reported war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Barge, her cargo, crew or other persons on board the Barge.

(b) The Barge, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Barge, her cargo, crew or other persons on board the Barge, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Barge be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c) The Barge shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(d) (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the Barge and their other interests (including, but not limited to, loss of earnings and detention, the crew and their protection and indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Barge is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then the actual premiums and/or calls paid shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(e) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due, or upon redelivery, whichever occurs first.

(f) The Barge shall have liberty:

(i) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Barge sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

(ii) to comply with the orders, directions or recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement.



Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

**PART II**
**BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY**

(iv) to discharge at any other port any cargo or part thereof which may render the Barge liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board the Barge when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(d) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within forty-eight (48) hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(e) If in compliance with any of the provisions of sub-clauses (a) to (d) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfilment of this Charter Party.

**31. Limitation of Liability**

(a) Notwithstanding any provisions of this Charter Party to the contrary, the Owners shall have the benefit of all limitations of, and exemptions from, liability accorded to the Owners or chartered Owners of Barges by any applicable statute or rule of law for the time being in force, and the same benefits to apply regardless of the form of signatures given to this Charter Party.

(b) The Owners shall not be responsible for loss of, damage to, or any liability arising out of anything towing, moving or shifting the Barges, any cargo laden upon or carried by Barges, the property of the Charterers, whether owned or chartered, including their Offshore Towing Tugs and Docking/Assist Tugs, or for personal injury or death of any Charterer's members or of anyone on board anything owned or chartered by the Charterers, arising out of or in any way connected with the performance of this Charter Party, even if such loss, damage, liability, injury or death is caused wholly or partially by the act, neglect or default of the Owner, and even if such loss, damage, liability, injury or death is caused wholly or partially by the unseaworthiness of any Vessel; and the Charterers shall indemnify, protect, defend and hold harmless the Owners from any and against all claims, costs, expenses, actions, proceedings, suits, demands, and liabilities whatsoever arising out of or in connection with such loss, damage, liability, personal injury or death.

(c) All exceptions, exemptions, defences, immunities, limitations of liability, indemnities, privileges and conditions granted or provided by this Charter Party or by any applicable statute, rule or regulation for the benefit of the Owners shall also apply to and be for the benefit of the Owners' parent, affiliated, related and subsidiary companies, the Owners' contractors, sub-contractors, the Vessel, its demise charterer(s), their respective Employees and their respective underwriters. The Owners shall be deemed to be acting as agent or trustee of and for the benefit of all such persons and parties set forth above, but only for the limited purpose of contracting for the extension of such benefits to such persons and parties.

(d) Notwithstanding any other provision of this Charter Party to the contrary, the Charterers shall always be responsible for any losses, damages or liabilities suffered by the Owners' Group, by the Charterers, or by third parties, with respect to the Barges or other property, personal injury or death, pollution or otherwise, which losses, damages or liabilities are caused, directly or indirectly, as a result of the Barges' carriage of any hazardous or noxious substances in whatever form as ordered by the Charterers, and the Charterers shall defend, indemnify the Owners and hold the Owners harmless for any expense, loss or liability whatsoever or howsoever arising with respect to the carriage of hazardous or noxious substances.

**32. Commission**

The Owners shall pay commission to the brokers named in Box 33 on any hire, mobilisation and/or demobilization fee paid under the Charter Party. If the full hire or fee is not paid owing to breach of Charter Party by either of the parties, the party liable therefor shall indemnify the brokers against their loss of commission.

**33. BIMCO Dispute Resolution Clause**

(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out

Copyright © 2008 BIMCO. All rights reserved. Any unauthorized copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008

## PART II
## BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY

of or in connection with this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

(b)* This Charter Party shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and any dispute arising out of or in connection with this Charter Party shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgement may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

In cases where neither the claim nor any counterclaim exceeds the sum of US$50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. current at the time when the arbitration proceedings are commenced.

(c)* This Charter Party shall be governed by and construed in accordance with the laws of the place mutually agreed by the parties and any dispute arising out of or in connection with this Charter Party shall be referred to arbitration at a mutually agreed place, subject to the procedures applicable there.

(d) Notwithstanding (a), (b) or (c) above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Charter Party. In the case of a dispute in respect of which arbitration has been commenced under (a), (b) or (c) above, the following shall apply:

(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the "Mediation Notice") calling on the other party to agree to mediation.

(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.

(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the costs of the arbitration as between the parties.

(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.

(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may take the mediation timetable into account when setting the timetable for steps in the arbitration.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

**PART II**
**BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY**

(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's costs and expenses.

(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the extent that they are disclosable under the law and procedure governing the arbitration.

Note: The parties should be aware that the mediation process may not necessarily interrupt time limits.

If Box 34 is not appropriately filled in, sub-clause (d) of this Clause shall apply. Sub-clause (d) shall apply in all cases.

*Note: Sub-clauses (a), (b) and (c) are alternatives; indicate alternative agreed in Box 34.

**34. BIMCO Notices Clause**

(a) All notices given by either party or their agents to the other party or their agents in accordance with the provisions of this Charter Party shall be in writing.

(b) For the purposes of this Charter Party, "in writing" shall mean any method of legible communication. A notice may be given by any effective means including, but not limited to, cable, telex, fax, e-mail, registered or recorded mail, or by personal service.

**35. Barge Documents**

Original Barge Documents are located in a binder located in the line locker onboard the Barge. Charterer is responsible for the safe keeping of the documents for the duration of the Charter Party period. Upon redelivery of the Barge, Charterer must confirm in writing that the documents remain onboard the Barge and Off-Hire Surveyor must confirm same. In the event the documents are lost during the Charter Party period, Charterer will be responsible for all costs associated with replacing them from Class and USCG.

**36. Stowage & Ballasting**

In the event subject Barge is to be loaded with cargo and/or ballast that is not compliant with its approved Stability Letter contents, prior approval SHALL be granted by "Trailer Bridge, Inc.", Classification Society (ABS), and USCG. If permission is granted to operate beyond Barge's approved Stability Letter, any and all slime, scale, barnacles, and/or aquatic growth above load-line (plimsoll mark) shall be removed and cleaned prior to being relieved from Charter. If Charterer is unable to adhere to above requirements and return Barge in same or better condition as received and documented by On Hire Survey, Charterer shall be held responsible for all associated costs for having Barge placed back into "as received" condition. Charterer shall not be relieved of Charter until assigned Off Hire Surveyor and "Trailer Birdge, Inc." are satisfied that Barge is placed back into "as received" condition and/or alternative monetary values are agreed between Charterer and "Trailer Bridge Inc."

In the event subject Charterer ballasts Barge as per its approved Stability Letter and a pre-approved ballast plan is reviewed and accepted by "Trailer Bridge Inc." and an authorized/approved Naval Engineer/Architect, any voids that receive ballast water SHALL be fully de-ballasted, high pressure (minimum 3,000 PSI) washed with fresh water, pumped dry, and all debris removed, to include removal of all paint chips, scale, rust etc. that may break free within voids from high pressure washing. Charterer SHALL not be released from Charter until assigned Off Hire Surveyor and "Trailer Bridge Inc." are satisfied that Barge is placed back into "as received" condition and/or alternative monetary values are agreed on between Charterer and "Trailer Bridge Inc."

**37. Barge Outfit**

Charterers shall be responsible for any/all required outfitting with Deck Fittings to suit their Container trade. Each Barge to be returned with Decks cleaned (ATLANTA BRIDGE) or Deck Fittings arranged in the same fashion (MEMPHIS BRIDGE) as at the time of Delivery and further evidenced by the On Hire Survey.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.

**PART II**
**BARGEHIRE 2008 - STANDARD BARGE CHARTER PARTY**

38. Notifcation of Off Hire

Off-Hire notification to be provided in writing in the folllowing intervals: 30 days, 14 days, 7 days, 24 hours. Owners to also receive Charterer's plan to commence and complete cleaning of the Barge at the same intervals.

39. Owner's Board of Directors (BOD)

This Agreement is SUBJECT TO Owner's BOD Approval.

Copyright © 2008 BIMCO. All rights reserved. Any unauthorised copying, duplication, reproduction or distribution of this BIMCO SmartCon document will constitute an infringement of BIMCO's copyright. Explanatory notes are available from BIMCO at www.bimco.org. First published 1994, revised 2008.